UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES H. WARD,<br><br>           Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>           Defendant. | CASE NO. C22-5252 BHS<br><br>ORDER |

This matter comes before the Court on Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss, Dkt. 6. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and grants in part and denies in part the motion for the reasons stated below.

## I.  BACKGROUND

This lawsuit stems from BANA's repeated attempts to foreclose on and clear title to a property previously owned by Plaintiff James Ward located at 1427 1st Street, Port Townsend, Washington ("the Property"). Dkt. 1, ¶ 6. Ward originally borrowed money from Countrywide Bank to purchase the Property. *Id.* ¶ 7. He executed a note reflecting his promise to repay the loan, and a deed of trust on the Property securing his repayment

ORDER - 1

obligation, on November 21, 2007. *Id.*; *see also id.* at 34–35 (Note), 37–49 (Deed of Trust).[1] In 2011, the deed of trust was assigned to BANA. *See id.* at 51.

Ward eventually defaulted on the loan. *Id.* ¶ 8. On August 8, 2014, BANA sued Ward in Jefferson County Superior Court, initiating a judicial foreclosure on the Property. *Id.* ¶ 9. BANA sought to recover judgment against Ward and the Property, including the principal and interest due, the cost of a title search, certain advances made by BANA, and attorney's fees. *Id.* ¶ 10; *see also id.* at 30. BANA waived its right to any deficiency judgment. *Id.* at 29. BANA also makes clear in its 2014 complaint that it had already attempted to non-judicially foreclosure on the Property.[2] *See id.* at 29.

Despite the pending judicial foreclosure, BANA proceeded to a nonjudicial foreclosure sale on the Property on February 17, 2017. *Id.* ¶ 11. Following the trustee's sale, Ward vacated the Property. *Id.* Federal National Mortgage Association ("Fannie Mae") purchased the Property at the trustee's sale for $225,000. *Id.* ¶ 12.

On October 22, 2018, BANA sought leave to amend its complaint in the 2014 Jefferson County case, opining that the trustee's sale may have been void because the judicial foreclosure action had been pending at the time and thus the nonjudicial

---

[1] The Court may consider Ward's loan documents and records without converting this motion to dismiss into one for summary judgment because they are attached to and referenced in his Complaint, and they form the basis of his claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Hummel v. Nw. Trustee Servs., Inc.*, 180 F. Supp. 3d 798, 803 n.1 (W.D. Wash. 2016).

[2] Ward asserts in his complaint that BANA sought $660.29 in attorney's fees relating to a previous non-judicial foreclosure that could not be completed. Dkt. 1, ¶ 10. BANA sought $2000 in attorney's fees in total in the 2014 lawsuit. Dkt. 1 at 30. It is unclear whether that $2000 included the $660.29 for the nonjudicial foreclosure, but it does establish that the 2014 judicial foreclosure was BANA's second attempt.

ORDER - 2

foreclosure was not in compliance with RCW 61.24.030(4). *Id.* ¶ 14; *see also id.* at 53–57 (Motion to Amend). The state court granted BANA's motion and BANA amended its complaint. *Id.* ¶ 16; *see also id.* at 59–66 (Amended Complaint).

After objecting to the further foreclosure action in state court, Ward filed a federal lawsuit in this Court, asserting claims for negligence, negligent misrepresentation, violations of the Washington Consumer Protection Act ("CPA"), violations of the Fair Debt Collection Practices Act, and abuse of process. *Id.* ¶¶ 17–18; *see also Ward v. Bank of America, N.A.*, No. 19-0185 RBL, Dkt. 1 (W.D. Wash. Feb. 7, 2019). BANA and Ward settled the state and federal court lawsuits. Dkt. 1, ¶ 19. Ward alleges that BANA never informed him that the Trustee's Deed from the nonjudicial foreclosure sale was insufficient to vest title in Fannie Mae[3] or that any further action was necessary. *Id.* ¶ 20. Ward further alleges that when he and BANA signed their settlement agreement in 2019, his understanding was that BANA already owned title to the property and that BANA never informed him that he needed to take any further action. *Id.* ¶¶ 21–22.

In July 2021, BANA reached out to Ward's counsel in the prior actions, informing him that Ward had never signed a deed to BANA, asking for such a deed, and threatening further legal action if he failed to cooperate. *Id.* ¶¶ 23–24. Ward did nothing. *Id.* ¶ 24.

In December 2021, BANA initiated another lawsuit in Jefferson County Superior Court for "Real Property Title Relief." *Id.* ¶ 25; *see also id.* at 68–72 (Complaint). Ward

---

[3] While the Court takes this allegation as true for the purposes of this motion, it is worth noting that Ward himself points out that BANA's Motion to Amend in the Jefferson County lawsuit stated on its face that the trustee's sale was possibly void. *See* Dkt. 1, ¶ 14.

ORDER - 3

alleges he was not served for several months. *Id.* ¶ 25. BANA asserts in that complaint that the settlement was intended to transfer title to BANA; Ward asserts that title transfer was not the purpose of the settlement because he had no title to transfer. *Id.* ¶ 26. In that suit BANA seeks "judgment vesting title to real property." *Id.* at 70. BANA also proposes two alternative remedies to clear title: (1) a judgment "declaring the Trustee's Deed vested the Property in [BANA] as fee simple and free of any interests of [Ward]; or (2) a judgment "canceling the Trustee's Deed, reinstating the Deed of Trust as the first position lien against the property, and permitting [BANA] to re-foreclose so as to obtain unclouded title." *Id.* at 70–71. BANA also moved the Superior Court to cancel what it deems to be "fraudulent instruments" that Ward recorded in Jefferson County that "impair the Deed of Trust and the debt it secures." *Id.* at 71. BANA named the recording numbers of sixteen such instruments but it is unclear what they are. *Id.*

Ward sued BANA in this Court in April 2022 alleging four causes of action: (1) violations of the CPA; (2) negligence; (3) negligent misrepresentation; and (4) outrage. Dkt. 1. He seeks (1) a judgment that he owns the subject property in fee simple absolute and that BANA and others have no title, lien, interest, or right in the property;[4] (2) a judgment that BANA's Deed of Trust is extinguished; (3) reasonable attorneys' fees and costs; and (4) actual and treble damages under the CPA. *Id.* at 21. Ward explains in his complaint that he fears that BANA will seek a deficiency judgment or other costs and

---

[4] It is unclear why Ward seeks title to the property as a proposed remedy. He concedes he vacated the property years ago and claims to want to gain only reprieve from BANA's repeated litigation. The issue is not currently before the Court, but it is worth noting that this is not a remedy the Court or a jury could award.

ORDER - 4

fees and that a "re-foreclosure" would negatively affect his credit score. *Id.* ¶¶ 37–38. He also asserts that he feels it is not his responsibility to fix a clouded title problem created by BANA. *Id.* ¶ 36.

BANA moves to dismiss, arguing that Ward failed to state a claim under all four causes of action. Dkt. 3. Specifically, it argues that Ward failed to plausibly allege an injury to business or property under the CPA; failed to plausibly allege that BANA owed him any duty of care; failed to plausibly allege that BANA made any misrepresentations to him, that he relied to his detriment on any such misrepresentations, or that BANA knew he would rely on any such misrepresentations; and failed to plausibly allege that BANA engaged in extreme or outrageous conduct. *Id.*

Ward argues that he suffered an injury to property under the CPA, that BANA owed him a fiduciary duty, that BANA made misrepresentations regarding his foreclosures and the settlement upon which he relied to his detriment, and that BANA's conduct in pursuing foreclosure and re-foreclosure over the past twelve years amounts to outrageous conduct. Dkt. 9. BANA's reply is brief, but it clarifies that BANA does not seek any deficiency judgment against Ward. Dkt. 10 at 2.

Each of Ward's claims and BANA's arguments for dismissal are addressed in turn.

## II. DISCUSSION

**A.  Motion to Dismiss Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.      CPA**

BANA argues that Ward fails to plausibly allege a CPA claim because he fails to "sufficiently allege injury to his business or property," in part because he disclaims any interest in the subject property. Dkt. 6 at 5–6. Ward avers that BANA admits in its Jefferson County case that if the Trustee's Deed Upon Sale were to be voided, Ward would be the record owner of the property and thus he still holds an interest in the

property. Dkt. 9 at 8. Ward also argues that he has suffered an injury in the form of money damages from having to consult with counsel and miss work. *Id.* at 8–9.

A CPA claim has five elements: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986)). Injury to business or property cannot include personal injury or injuries for mental distress, embarrassment, or inconvenience. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431 (2014) (en banc). "Investigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 62 (2009) (en banc); *see also Dawson v. Genesis Credit Mgmt.*, No. 17-cv-0638 JCC, 2017 WL 5668073, at *5 (W.D. Wash. Nov. 27, 2017) ("[T]he expenses incurred in consulting a lawyer about a debt or the costs of investigating a debt are sufficient to demonstrate an injury under the CPA.").

Ward alleges that BANA's repeated foreclosure lawsuits were unfair and deceptive and that he was required to consult a lawyer and investigate to determine his potential legal and financial exposure. Dkt. 1, ¶¶ 49–51. He argues that he has incurred expenses and lost income by forgoing work to litigate the multiple lawsuits involved in this case. Ward has plausibly alleged that BANA's unfair or deceptive acts or practices caused him injury to his property.

BANA's Motion to Dismiss Ward's CPA claim is DENIED.

**C.     Negligence**

BANA argues that Ward cannot plausibly allege a negligence claim because BANA, as the servicer or owner of Ward's loan, does not and did not owe him a duty of care. Dkt. 6 at 6. Ward argues that a foreclosing party owes a duty of care to the borrower under the Deed of Trust Act ("DTA"). Dkt. 9 at 10 (quoting *Ward v. Bank of Am. Nat'l Ass'n*, 2019 WL 2103124, at *4 (W.D. Wash. May 14, 2019)). Ward also argues that a mortgagee owes a fiduciary duty to a mortgagor to act in good faith and use reasonable diligence in conducting a foreclosure sale. *Id.* at 11–12. BANA responds that Ward only cites to out of state authority to suggest it owes him a duty of care. Dkt. 10 at 3.

To state a negligence claim, a plaintiff must show: (1) the existence of a duty; (2) a breach of that duty; (3) resulting injury; and (4) causation." *Lowman v. Wilbur*, 178 Wn.2d 165, 169 (2013) (en banc). "The general rule in Washington is that a lender is not a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists." *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426–27 (1994). A loan servicer is treated as a lender for purposes of determining its duty to a borrower, so long as the servicer does not exceed the scope of a conventional lender. *Smokiam RV Resort LLC v. William Jordan Cap., Inc.*, No. 17-cv-0885 JCC, 2017 WL 4224408, at *4 (W.D. Wash. Sept. 22, 2017).

"A quasi-fiduciary relationship may exist where the lender has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the lender's advice, and the lender knew the borrower was relying on the advice." *Miller*, 72 Wn. App. at 427. A duty in a negligence action may also be

predicated on the violation of a statute. *Jackson v. City of Seattle*, 158 Wn. App. 647, 652 (2010). In determining whether a statute shall be considered in determining liability in a negligence action, Washington courts look to § 286 of the Restatement (Second) of Torts:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

RESTATEMENT (SECOND) OF TORTS § 286 (AM. LAW INST. 1965); *see also Jackson*, 158 Wn. App. at 652–60 (applying § 286 to determine whether an administrative regulation established a duty of care).

As the lender and servicer of Ward's loan, BANA did not generally owe him a fiduciary duty under Washington law. Further, Ward does not allege that BANA advised him in any way, creating a quasi-fiduciary relationship. In other words, BANA dealt with Ward at arms-length and no general duty existed. The remaining question, therefore, is whether the DTA gives rise to a duty of care, as Ward alleges, Dkt. 1, ¶¶ 54–56, and as Judge Leighton concluded in Ward's prior federal lawsuit against BANA, *Ward*, 2019 WL 2103124, at *4.

The Court agrees with Ward and Judge Leighton that the DTA establishes a duty of care in this case. Ward is within the class the DTA was designed to protect—borrowers subjected to nonjudicial foreclosures. *See Frias*, 181 Wn.2d 412, 423 (holding that the DTA, RCW 61.24.127, was "enacted to benefit borrowers or grantors subjected

to nonjudicial foreclosure"). Ward is also asserting the kind of interest that the DTA was designed to protect; namely, that BANA was negligent in the foreclosure process. *See Cox v. Helenius*, 103 Wn.2d 383, 387 (1985) (en banc) ("The [DTA] contains several safeguards to ensure that the nonjudicial foreclosure process is fair and free from surprise" including requiring "that no action is pending on an obligation secured by the deed of trust[.]"). The DTA was clearly designed in part to protect borrowers from uncertainty and unfair practices, likely to avoid a scenario such as this one, where a borrower is plagued by repeated foreclosure actions over the course of nearly a decade because of the lender or servicer's carelessness in conducting a nonjudicial foreclosure.

BANA's Motion to Dismiss Ward's negligence claim is DENIED.

**D.    Negligent Misrepresentation**

BANA argues that Ward fails to allege with particularity that it made any false representation to him, or that he relied on any such misrepresentation to his detriment. Dkt. 6 at 7. BANA further argues that Ward fails to allege that BANA knew or should have known that any alleged misrepresentation was made to Ward to guide him in a business transaction. *Id.* Ward argues that he relied on BANA's misrepresentations regarding the propriety of the foreclosure sale and the transfer of his rights in the property, both after the initial foreclosure and after his settlement with BANA, and that such reliance was to his detriment because he gave up his right of possession prematurely. Dkt. 9 at 12–14. BANA conclusively replies that Ward's claims are speculative. Dkt. 10 at 3.

To state a negligent misrepresentation claim, a plaintiff must show, by clear, cogent, and convincing evidence, that:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false; (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions; (3) the defendant was negligent in obtaining or communicating the false information; (4) the plaintiff relied on the false information; (5) the plaintiff's reliance was reasonable; and (6) the false information proximately caused the plaintiff damages.

*Merriman v. Am. Guar. & Liab. Ins. Co.*, 198 Wn. App. 594, 613 (2017). An omission does not ordinarily constitute negligent misrepresentation, because "a plaintiff must justifiably rely on a misrepresentation." *Id.* at 614. An omission when a party has a duty to disclose, however, can constitute negligent misrepresentation. *Id.* "[T]he duty to disclose arises only in the context of an inherently fiduciary relationship or some type of special relationship of trust and confidence giving rise to quasi-fiduciary duties of disclosure." *Baker Boyer Nat'l Bank v. Foust*, 6 Wn. App. 2d 375, 387 (2018) (citing *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 732 (1993)).

Ward's primary argument for his negligent misrepresentation claim is that BANA "did nothing" to finalize the initial foreclosure or to notify him that title was defective. Dkt. 1, ¶¶ 61–63. The only affirmative action or representation Ward alleges is his settlement agreement with BANA. *Id.* ¶ 62. That allegation, however, is conclusory and unclear; it simply states that the settlement agreement promised "finality." *Id.* Further, Ward does not allege in the context of his negligent misrepresentation claim that BANA owed him a duty to disclose because of a fiduciary relationship.

1     BANA's Motion to Dismiss Ward's negligent misrepresentation claim is
2 GRANTED. That claim is DISMISSED.

3 **E.     Outrage**

4     BANA argues that Ward fails to allege that it engaged in outrageous or extreme conduct because all actions it took were reasonable given the fact that Ward still held title to the subject property. Dkt. 6 at 8. Ward argues that BANA's conduct amounted to outrage because its repeated legal actions against Ward over the last eight years have threatened, and continue to threaten, his finances, and that BANA's legal actions are confusing, which leaves Ward without a clear path out of their long legal battle. Dkt. 9 at 14–16. BANA replies that it is not seeking a deficiency judgment, but only to clear title on the subject property, and thus Ward has no money at stake in the underlying state action. Dkt. 10 at 2–3.

    To prevail on a claim for the tort of outrage, also known as intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). "Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sutton v. Tacoma School Dist. No. 10*, 180 Wn. App. 859 (2014) (internal citations omitted) (emphasis added). Whether certain conduct is sufficiently outrageous is typically a jury question, but the court initially determines if

1 | "reasonable minds could differ on whether the conduct was sufficiently extreme to result
2 | in liability." *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792 (2014) (en banc).

3 | Conduct during foreclosure can support an outrage claim, but "it must satisfy the high burden applicable to these claims." *Id.* at 792–93 (collecting cases). When courts have concluded conduct involving foreclosures to be outrageous under Washington law, the conduct has been particularly egregious. *See, e.g.*, *Montgomery v. SOMA Fin. Corp.*, No. C13-360 RAJ, 2014 WL 2048183, at *7 (W.D. Wash. May 19, 2014) (concluding plaintiffs had plausibly stated an outrage claim where they alleged bank induced them to default and then attempted to foreclose). The facts of this case, in contrast, resemble those of a Washington Court of Appeals case, *U.S. Bank N.A. v. Kendall*, 9 Wn. App. 2d 1044, 2019 WL 2750171 (2019). There, the bank began foreclosure on the subject property four times before completing the process. *Id.* at *1–2. The Court of Appeals concluded that "in light of [the plaintiff's] long history of default, efforts to foreclose on the property were more logical rather than so extreme as to go beyond all possible bounds of decency." *Id.* at *8.

16 | Similarly, here, while a reasonable juror might reasonably conclude that BANA was careless in attempting multiple unsuccessful foreclosures on the subject property, BANA was acting to protect its own interest in the property. BANA's failure to properly foreclose and its failure to obtain a signed deed from Ward after the prior settlement are confusing, but they are not "so extreme as to go beyond all possible bounds of decency." *Id.* at *8.

1    BANA's Motion to Dismiss Ward's outrage claim is GRANTED. Ward's outrage claim is DISMISSED.

**F.    Leave to Amend**

Ward moves, in the alternative, for leave to amend his complaint. Dkt. 9 at 17. BANA did not respond to that request.

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

The Court will not grant Ward leave to amend his outrage claim. The facts surrounding that claim are largely agreed upon and the Court concludes that BANA's actions were not so outrageous or extreme so as to constitute outrage. The Court will, however, grant Ward leave to amend his negligent misrepresentation claim. It is possible Ward could cure that claim by alleging a fiduciary relationship or by alleging actual affirmative misrepresentations BANA made to him.

### III.   ORDER

Therefore, it is hereby **ORDERED** that Defendant Bank of America's Motion to Dismiss, Dkt. 6, is **GRANTED** as to Ward's negligent misrepresentation and outrage claims, and **DENIED** as to Ward's negligence and CPA claims. Ward's negligent misrepresentation claim is **DISMISSED without prejudice**; his outrage claim is

1 | **DISMISSED with prejudice**. Ward may file an amended complaint as set out herein no
2 | later than October 14, 2022.
3 |     Dated this 28th day of September, 2022.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge